1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

BRODIE L. BOWMAN, JAKE BRYANT,
BRIAN STEPHEN CHU, KD CARBON
CAPTURE, LP, KEVIN DOUGLAS,
ALLIMAR HOLDINGS1 GP, MARK
DOUGLAS, ALLISON DOUGLAS,
KWANSOO LEE, BLUESTRAT HOLDINGS
GP, STEPHEN BLAKE MCGARRAH,
POLLACK BROTHERS LIMITED
PARTNERSHIP, ADAM POLLACK,
JONATHAN POLLACK, RYAN RICHARD,
JAMES DOUGLAS, STACEY TILLMAN,
AARON WHITE AND TIMOTHY S.
PEABODY,

Plaintiffs,

v.

UNIBANK, U & I FINANCIAL CORP.,
SIMON BAI, D. BENJAMIN LEE, PETER
PARK, STEPHANIE YOON, AND DOES
1-12,

Defendants.

Case No. 2:23-cv-971

**PLAINTIFFS' COMPLAINT**

**JURY DEMAND**

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

1

## INTRODUCTION

2   On May 8, 2023, the U.S. Securities and Exchange Commission ("SEC") announced that

3   it had filed an emergency action in Waco, Texas seeking to stop Roy Hill ("Hill") and Eric Shelly

4   ("Shelly") from selling fraudulent oil-and-gas-related investments in Hill's company, Clean

5   Energy Technology Association, Inc. ("CETA"), in great part through Shelly's company Freedom

6   Impact Consulting, LLC ("FIC"). News of the complaint, originally filed under seal on May 3,

7   2023, rippled out to investors via the web, phone calls, and text messages.

8   CETA promoted itself as inventing and owning patented technology that it used to build

9   carbon capture and utilization units ("CCUs") that could be installed on oil and natural gas wells

10  and pipelines to pull carbon dioxide from the gas. The carbon dioxide could then be sold for use

11  elsewhere in the oil and gas industry. CETA further touted that it had contracts with ExxonMobil

12  to deploy the CCUs. In reality, the CCUs did not perform as represented. Moreover, CETA had

13  no patents on its carbon capture technology and no contracts with ExxonMobil for deployment.

14  All of the CCUs sold to investors were non-working prototypes. Additionally, some investors may

15  have purchased a CCU that did not exist. Ultimately, CETA was a Ponzi scheme, paying old

16  investors returns with money taken from new investors.

17  According to the SEC receiver's report, CETA brought in over $155 million from 500

18  investors nationwide since 2019. The receiver is still investigating and expects these numbers to

19  increase significantly. Like all Ponzi schemes, CETA could not have taken the volume of victim-

20  investors' funds that it did without financial institutions participating. Hill maintained numerous

21  accounts at Wells Fargo Bank, and co-conspirator Shelly had numerous accounts with Citizens &

22  Northern Bank which he used to sell feeder-fund investments in the CCUs. But some investors

23  invested directly with CETA, bypassing Shelly's funds. Seeking financing, they ended up getting

24  loans through UniBank of Lynnwood, WA.

25  The loans UniBank put together for CETA investors were not ordinary loans. UniBank

26  offered 7(a) loans guaranteed by the U.S. Small Business Administration ("SBA"). Unlike an

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 2

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

ordinary lender, UniBank performed additional services for CETA investors, like ensuring their corporate form would not cause problems when submitted to the SBA, ensuring their applications met SBA requirements, providing them with proper forms, communicating directly with CETA to ensure the loans would meet SBA requirements, and even performing due diligence investigations into CETA prior to making the SBA loans.

By doing so, UniBank stepped out of the shoes of an ordinary bank making a loan, and operated more as a promoter for CETA and an advisor to Plaintiffs. Further, by conducting due diligence investigations tied to so many large investments, UniBank had access to CETA's books and records that normal investors could not demand. Still, UniBank's due diligence ignored obvious signs of fraud that should have been enough to stop any loans from being made and even circumvented SBA requirements in order to make the loans qualify for SBA guarantees. If UniBank had not breached their duty to these investors, all of the losses detailed below could have been avoided.

## PARTIES

### A. Plaintiffs

1.      **Brodie L. Bowman** ("Dr. Bowman"), an individual over the age of 18, is a resident of the State of Florida.

2.      **Jake Bryant** ("Mr. Bryant"), an individual over the age of 18, is a resident of the State of Georgia.

3.      **Brian Stephen Chu** ("Dr. Chu"), an individual, is a resident of the State of California.

4.      **KD Carbon Capture, LP** ("KD Carbon") is a limited partnership organized under the laws of the State of Texas, with its principal place of business located at 5900 Balcones Dr. Suite 100, Austin, TX 78731.

5.      **Kevin Douglas** ("K. Douglas"), an individual, is a resident of the State of Mississippi. K. Douglas is a General Partner of KD Carbon.

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 3

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

6.     **Allimar Holdings1 GP** ("Allimar Holdings1") is a general partnership organized under the laws of the State of Alabama, with its principal place of business located at 4816 Ravine Ct., Mobile, AL 36608.

7.     **Mark Douglas** ("M. Douglas"), an individual over the age of 18, is a resident of the State of Alabama.  M. Douglas is a General Partner of Allimar Holdings1.

8.     **Allison Douglas** ("A. Douglas"), an individual over the age of 18, is a resident of the State of Alabama.  A. Douglas is a General Partner of Allimar Holdings1.

9.     **Kwansoo Lee** ("Dr. Lee"), an individual over the age of 18, is a resident of the State of Washington.

10.     **Bluestrat Holdings GP** ("Bluestrat") is a general partnership organized under the laws of the State of Alabama, with its principal place of business located at 311 E Glenwood Dr, Birmingham, AL 35209.  At the time it obtained its SBA loan from UniBank, Bluestrat was organized as an LLC, but was later restructured to a general partnership.

11.     **Stephen Blake McGarrah** ("Mr. McGarrah"), an individual over the age of 18, is a resident of the State of Alabama.  Mr. McGarrah was the sole Member of Bluestrat at the time Bluestrat obtained its SBA loan from UniBank.  Mr. McGarrah is currently a general partner of Bluestrat.

12.     **Pollack Brothers Limited Partnership** ("Pollack Bros") is a limited partnership organized under the laws of the State of Wyoming, with its principal place of business located at 17 Sackston Woods Lane, St Louis, Missouri 63141.

13.     **Adam Pollack** ("A. Pollack"), an individual over the age of 18, is a resident of the State of Colorado.  A. Pollack is a General Partner of Pollack Bros.

14.     **Jonathan Pollack** ("J. Pollack"), an individual over the age of 18, is a resident of the State of Missouri.  J. Pollack is a General Partner of Pollack Bros.

15.     **Ryan Richard** ("Dr. Richard"), an individual over the age of 18, is a resident of the State of Georgia.  Richard is a General Partner of RyanJames PL21, which is a trade name

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 4

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

1    registered with the Fulton County, Georgia clerk's office.

2        16.    **James Douglas** ("J. Douglas"), an individual over the age of 18, is a resident of the

3    State of Mississippi.  J. Douglas is a General Partner of RyanJames PL21, which is a trade name

4    registered with the Fulton County, Georgia clerk's office.  At the time of investment, J. Douglas

5    was 17 years old.

6        17.    **Stacey Tillman** ("Ms. Tillman"), an individual over the age of 18, is a resident of

7    the State of Tennessee.

8        18.    **Aaron White** ("Dr. White"), an individual over the age of 18, is a resident of the

9    State of Texas.

10       19.    **Timothy S. Peabody** ("Mr. Peabody"), an individual over the age of 18, is a

11   resident of the state of Georgia.

12       20.    Collectively, the above-named individuals and entities are hereafter referred to as

13   "Plaintiffs."

14   **B. Defendants**

15       21.    **UniBank** is a state chartered commercial bank, organized under the laws of the

16   State of Washington, with its principal place of business located at 19315 Hwy 99, Lynnwood,

17   WA 98036.  In 2010, UniBank filed a Plan of Reorganization with the Washington Secretary of

18   State, pursuant to which all shares of UniBank stock were converted into stock of U & I Financial

19   Corp.  Since that date, UniBank has been a wholly owned subsidiary of U & I Financial Corp.

20       22.    **U & I Financial Corp.** ("U&I") is a profit corporation, organized under the laws

21   of the State of Washington, with its principal place of business located at 19315 Hwy 99,

22   Lynnwood, WA 98036.

23       23.    U&I is a one-bank holding company, which owns and controls all shares of

24   UniBank.

25       24.    U&I and UniBank share directors and officers, and report all financial information

26   required by the State of Washington under the name of U&I.

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 5

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

25.     **Simon Bai**, an individual over the age of 18, is a resident of the State of Washington.  On the 2022 annual reports filed with the Washington Secretary of State, Bai is listed as a Governor of UniBank and U&I.  Bai is SVP of UniBank and CFO of both UniBank and U&I.

26.     **D. Benjamin Lee**, an individual over the age of 18, is a resident of the State of Washington.  On the 2022 annual reports filed with the Washington Secretary of State, Lee is listed as a Governor of UniBank and U&I.  Lee is also Chairman of the Board of Directors for UniBank and, upon information and belief, Chairman of the Board of Directors for U&I.

27.     **Peter Park**, an individual over the age of 18, is a resident of the State of Washington.  On the 2022 annual reports filed with the Washington Secretary of State, Park is listed as a Governor of UniBank and U&I.  Park is also the President and Chief Executive Officer of UniBank and U&I.  Park is also a Director of UniBank and, upon information and belief, a Director of U&I.

28.     **Stephanie Yoon**, an individual over the age of 18, is a resident of the State of Washington.  On the 2022 annual reports filed with the Washington Secretary of State, Yoon is listed as a Governor of UniBank and U&I.

29.     **DOES 1-12**, all of whom are individuals, are members of the Board of Directors of UniBank and U&I.  UniBank is a privately held company, so its directors cannot be immediately identified.  However, the identity of the Does 1-12 can be easily confirmed though discovery after commencement of the action.  Further, due to their positions with UniBank and U&I, the filing of the complaint will make them aware of the allegations against them.

30.     Collectively, the above-named individual Defendants with the Does 1-12 are hereafter referred to as the "Governor Defendants."

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because the action involves a claim arising under the laws of the United States.

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

32.     This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

33.     This Court has personal jurisdiction over Defendants because Defendants reside or have their principal place of business within this District and because Defendants engaged in the conduct set forth in this Complaint within this District.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred at UniBank's offices within this District.

35.     Venue is also proper in this District pursuant to 18 U.S.C. § 1965 because Defendants reside in and/or transact their affairs within this District.

## FACTUAL ALLEGATIONS

36.     Hill formed CETA as a Texas corporation in 2009 and has since controlled the entity as its President and Chairman.  Before offering his CCU investments, Hill offered several other investment projects related to other energy ideas, including coal distillation technology, among others.

37.     Several Plaintiffs invested in CETA's other projects before investing in the CCUs and received returns on their investments.

38.     CETA claimed in a business plan related to a 2020 offering that its coal distillation units could "transform[] raw coal into a much cleaner, hotter burning, better coal called COAL*lite*."  CETA also claimed the process produced a hydrocarbon solution as a byproduct, called CETA*Solve*, that had multiple uses in the fossil fuel production industry.

39.     CETA claimed that CETA*Solve* was trademarked and patented.  However, there are no patents or trademarks registered for CETA*Solve*.

### A.  The CCU Ponzi Scheme is Born

40.     In 2019, CETA began offering investments in new technology, separate from its other projects, that morphed into the business of CCUs.

41.     CETA claimed to have invented and patented the CCUs.  However, there are no patents registered for the CCUs.

42.     According to CETA, the CCUs used CETA*Solve* to remove around 90% of the carbon dioxide out of natural gas flowing in wells or pipelines, allowing gas producers to prepare the gas for sale without shipping it to a processing site. CETA claimed that it leased the CCUs to gas producers, charging them a fee per barrel of CETA*Solve* used.  After the $CO_2$ is removed from the gas, CETA claimed that it resold the solvent, now infused with $CO_2$, to oil and gas producers for use in enhanced oil and gas recovery.

43.     Hill offered investors the opportunity to purchase CCUs from CETA.  Once purchased, the investors would lease the CCUs back to CETA.  CETA would, in turn, lease the CCUs to an oil and gas producer, including deploying and maintaining the machines.  CETA would be paid based upon oil and gas revenue generated by the pipeline operator using the CCU, and the barrels of $CO_2$-laden CETA*Solve* sold.  CETA claimed it would then pay a portion of this to the investor.

44.     The cost to purchase a CCU from CETA was originally around $1,500,000 for a larger "Pipeline" CCU or around $1,140,000 for the smaller "Nomad" CCU.  Later, the price of Pipeline CCUs increased to $1,650,000.

45.     Shelly, a dentist, formed FIC in 2007.  FIC purported to conduct business by providing investors with passive income strategies and tax mitigation tools.  After meeting Hill in 2019, Shelly, through FIC, began offering and selling investments in CETA through a series of Funds that Shelly established.

46.     Due to the high initial purchase price for the CCUs, many investors were unable to purchase a CCU directly from CETA.  FIC's funds pooled multiple investors' money together to purchase CCUs, bringing the cost-per-investor down, such that more people could invest.

47.     FIC charged a premium for investment in his funds.  For instance, some of Shelly's offering documents note a purchase price of $1,725,000 per Pipeline CCU – higher than the cost

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 8

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

to purchase one directly from CETA. FIC also kept a percentage of the profits from CETA and offered a set payment rate to fund investors over a set term, such that any returns above that rate or beyond the seven-year term would go to FIC.

**B. UniBank Fails to Perform Adequate Due Diligence**

48.    In the Spring of 2020, Dr. Richard, having seen Hill's pitch materials, began looking for a way to invest in the CCU offering. However, Dr. Richard did not want to pay the added costs associated with investing through Shelly and FIC.

49.    Dr. Richard had previously obtained an SBA loan through UniBank for an unrelated investment. Further, a friend of Dr. Richard had already used UniBank for a loan to fund another investment with CETA. Due to this history, Dr. Richard and K. Douglas contacted UniBank to see if it could provide an SBA loan for CCUs.

50.    Wan Kim is the SBA Loan Production Manager for UniBank and was involved in originating every SBA loan for each Plaintiff's CCU investment.

51.    During Summer of 2020, Wan Kim travelled to Fairfield, Texas to meet with Hill about CETA over two days.

52.    On the first day, Hill met with Wan Kim and a group of around a dozen potential investors to discuss CETA and its projects.

53.    On the second day, Wan Kim met with Hill to discuss investments with CETA through UniBank.

54.    During this second meeting, Wan Kim asked Hill to provide financial documents for CETA, including audited company financials, bank statements, tax returns, and information supporting revenue projections that CETA had provided to potential investors.

55.    UniBank sought these financial documents so that it could evaluate CETA's business for the purpose of making SBA guaranteed loans to borrowers seeking to invest in CCUs.

56.    Hill first agreed to deliver the requested documents but never actually gave the requested information to UniBank. UniBank only obtained unaudited financial information, which

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 9

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

was prepared by CETA and could not be verified, and a list of transactions generated by CETA, instead of official bank statements.

57.     CETA also touted to investors that it had contracts with Exxon, pursuant to which Exxon would lease and utilize CCUs.  This representation greatly impacted Plaintiffs' decisions to invest.

58.     UniBank was aware of CETA's claimed relationship with Exxon and requested copies of contracts.  CETA never provided these documents to UniBank.

59.     Despite not receiving documents to verify CETA's operations, financial performance, and contracts, UniBank began providing financing for CCU investments using SBA 7(a) loans in the Spring of 2021.

**C.  UniBank Provides SBA Loans to Plaintiffs for CCUs**

60.     On March 22, 2021, Unibank closed its first CCU-related SBA 7(a) loan to Plaintiffs.  The loan was given to KD Carbon, for the purchase of three CCUs.  The total purchase price was $4,500,000.  The total loan amount was $3,150,000.

61.     All loan documents were signed on behalf of KD Carbon by K. Douglas, as general partner of KD Carbon.  K. Douglas also signed an unconditional guarantee, making him personally responsible for payment of the note in the event KD Carbon defaulted.  UniBank provided the loan documents to K. Douglas electronically over the internet via DocuSign.

62.     On April 1, 2021, K. Douglas transferred $1,525,000 to his UniBank checking account to cover down payment on the CCU, SBA loan fees, and several months' payments toward the loan after closing.

63.     On April 2, 2021, $1,525,000 was wired from KD Carbon's UniBank account to a KD Carbon account at Citizens and Northern Bank in Texas, including $1,350,000 for the down payment on the CCUs and $175,000 for loan payments.

64.     As of May 31, 2023, KD Carbon's loan with Unibank has a balance of approximately $2,676,911.  K. Douglas, on behalf of KD Carbon, has paid approximately

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 10

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

$473,089 in principal and $404,092 in interest to UniBank on the loan.

65. On November 22, 2021, UniBank closed a CCU-related SBA 7(a) loan for RyanJames for the purchase of one CCU. The total purchase price was $1,650,000. The total loan amount was $1,155,000.

66. All loan documents were signed on behalf of RyanJames by Dr. Richard and J. Douglas, as general partners of RyanJames. Dr. Richard and J. Douglas also signed unconditional guarantees, making them personally responsible for payment of the note in the event RyanJames defaulted.

67. In October 2021, Dr. Richard and J. Douglas funded a UniBank checking account with $582,500 to cover down payment on the CCU, SBA loan fees, and several months' payments towards the loan after closing.

68. On November 24, 2021, Dr. Richard authorized UniBank to wire $495,000 to CETA on behalf of RyanJames for the down payment on the CCU. UniBank provided the wire authorization to Dr. Richard electronically over the internet via DocuSign.

69. As of May 31, 2023, RyanJames's loan with Unibank has a balance of $956,957.35. Dr. Richard, on behalf of RyanJames, has paid $198,042.65 in principal and $117,541.17 in interest to UniBank on the loan.

70. On December 14, 2021, UniBank closed a CCU-related SBA 7(a) loan for Bluestrat for the purchase of one CCU. The total purchase price was $1,650,000. The total loan amount was $1,155,000.

71. On December 14, 2021, UniBank employee Esther Yang emailed SBA forms to Mr. McGarrah to be completed via DocuSign.

72. All loan documents were signed on behalf of Bluestrat by Mr. McGarrah as a Member of Bluestrat. Mr. McGarrah also signed unconditional guarantees, making him personally responsible for payment of the note in the event Bluestrat defaulted.

73. On December 13, 2021, Mr. McGarrah funded a UniBank checking account with

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 11

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

$614,000 to cover down payment on the CCU, SBA loan fees, and several months' payments towards the loan after closing.

74.    On December 15, 2021, Mr. McGarrah authorized UniBank to wire the $495,000 from Bluestrat's account to CETA for the down payment on the CCU.  UniBank provided the wire authorization to Mr. McGarrah electronically over the internet via DocuSign.

75.    As of May 31, 2023, Bluestrat's loan with Unibank has a balance of $818,975.25. Mr. McGarrah, on behalf of Bluestrat, has paid $336,024.75 in principal and $114,689.56 in interest to UniBank on the loan.

76.    On March 1, 2022, UniBank closed a CCU-related SBA 7(a) loan for Allimar Holdings1 for the purchase of two CCUs.  The total purchase price was $3,300,000.  The total loan amount was $2,310,000.

77.    On February 16, 2022, UniBank employee Esther Yang emailed SBA loan documents to M. Douglas electronically for signature via DocuSign.

78.    All loan documents were signed on behalf of Allimar Holdings1 by M. Douglas and A. Douglas as general partners of Allimar Holdings1.  A. Douglas and M. Douglas also signed unconditional guarantees, making them personally responsible for payment of the note in the event Allimar Holdings1 defaulted.

79.    On March 11, 2022, A. Douglas authorized UniBank to wire $990,000 from Allimar Holdings1's account to CETA for the down payment on the CCU.   UniBank provided the wire authorization to M. Douglas electronically over the internet via DocuSign.

80.    As of May 31, 2023, Allimar Holdings1's loan with Unibank has a balance of approximately $1,899,002.67.  A. Douglas and M. Douglas, on behalf of Allimar Holdings1, have paid approximately $410,997.33 in principal and $224,073.31 in interest to UniBank on the loan.

81.    On March 30, 2022, UniBank closed a CCU-related SBA 7(a) loan for Ms. Tillman for the purchase of one CCU.  The total purchase price was $1,650,000.  The total loan amount was $1,155,000.

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 12

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

82.     All loan documents were signed by Ms. Tillman.

83.     Ms. Tillman funded a UniBank checking account with $613,000.36 to cover down payment on the CCU, SBA loan fees, and several months' payments towards the loan after closing.

84.     On March 31, 2022, Ms. Tillman authorized UniBank to wire $495,000 from her account to CETA for the down payment on the CCUs.  UniBank provided the wire authorization to Ms. Tillman electronically over the internet via DocuSign.

85.     As of May 31, 2023, Ms. Tillman's loan with Unibank has a balance of $986,290.21.  Ms. Tillman has paid approximately $168,709.79 in principal and $96,141.52 in interest to UniBank on the loan.

86.     On May 25, 2022, UniBank closed a CCU-related SBA 7(a) loan for Dr. Bowman (d/b/a BLB Equity) for the purchase of one CCU.  The total purchase price was $1,650,000.  The total loan amount was $1,155,000.

87.     SBA loan documents were provided to Dr. Bowman electronically for signature via DocuSign sent from UniBank employees Yuko Elliott and Esther Yang on March 10, April 25, April 28 and May 4, 2022.  On May 4, 2022, UniBank employees Wan Kim and Sunny Kim also electronically signed Dr. Bowman's loan documents via DocuSign.

88.     All loan documents were signed by Dr. Bowman.

89.     On May 25, 2022, Dr. Bowman authorized UniBank to wire $495,000 from his account to CETA for the down payment on the CCU.  UniBank provided the wire authorization to Dr. Bowman electronically over the internet via DocuSign.

90.     As of May 31, 2023, Dr. Bowman's loan with Unibank has a balance of $1,040,004.19.  Dr. Bowman has paid $114,995.81 in principal and $88,624.78 in interest to UniBank on the loan.

91.     On June 23, 2022, UniBank closed a CCU-related SBA 7(a) loan for Mr. Peabody for the purchase of one CCU.  The total purchase price was $1,650,000.  The total loan amount was $1,155,000.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

1      92.     All loan documents were signed by Mr. Peabody.

2      93.     Previously, in June 2021, Mr. Peabody funded a UniBank checking account with

3  $617,500 to cover down payment on the CCU, SBA loan fees, and several months' payments

4  towards the loan after closing.

5      94.     On June 30, 2022, Mr. Peabody authorized UniBank to wire $495,000 from his

6  account to CETA for the down payment on the CCU.  UniBank provided the wire authorization to

7  Mr. Peabody electronically over the internet via DocuSign.

8      95.     As of May 31, 2023, Mr. Peabody's loan with Unibank has a balance of

9  $1,042,029.36.  Mr. Peabody has paid $112,970.64 in principal and $90,494.17 in interest to

10  UniBank on the loan.

11      96.     On September 15, 2022, UniBank closed a CCU-related SBA 7(a) loan for Pollack

12  Bros for the purchase of one CCU.  The total purchase price was $1,650,000.  The total loan

13  amount was $1,155,000.

14      97.     All loan documents were signed on behalf of Pollack Bros by A. Pollack and J.

15  Pollack as general partners of Pollack Bros.  A. Pollack and J. Pollack also signed unconditional

16  guarantees, making them personally responsible for payment of the note in the event Pollack Bros

17  defaulted.  UniBank provided the loan forms to A. Pollack and J. Pollack electronically over the

18  internet via DocuSign.

19      98.     A. Pollack and J. Pollack, on July 22 and July 26, 2022, respectively, wired

20  $307,000 each to Pollack Bros UniBank checking account to cover down payment on the CCU,

21  loan fees, and payments towards the loan after closing.

22      99.     On September 16, 2022, A. Pollack and J. Pollack authorized UniBank to wire

23  $495,000 from the Pollack Bros' account to CETA for the down payment on the CCU.

24      100.    As of May 31, 2023, Pollack Bros's loan with Unibank has a balance of

25  $1,074,589.42.  A. Pollack and J. Pollack, on behalf of Pollack Bros, have paid $80,410.58 in

26  principal and $72,348.28 in interest to UniBank on the loan.

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

1

2      101.    On September 29, 2022, UniBank closed a CCU-related SBA 7(a) loan for Dr.

3  White for the purchase of one CCU.  The total purchase price was $1,650,000.  The total loan

4  amount was $1,155,000.

5      102.    On August 29, September 19, and September 29, 2022, UniBank employees Esther

6  Yang and Gee Hyun Lim emailed SBA loan documents to Dr. White electronically for signature

7  via DocuSign.

8      103.    All loan documents were signed by Dr. White.

9      104.    Dr. White opened a UniBank account and funded it with $617,000 to cover down

10  payment on the CCU, loan fees, and several months' payments towards the loan after closing.

11      105.    On September 30, 2022, Dr. White authorized UniBank to wire $495,000 from his

12  account to CETA for the down payment on the CCU.  UniBank provided the wire authorization to

13  Dr. White electronically over the internet via DocuSign.

14      106.    As of May 31, 2023, Dr. White's loan with Unibank has a balance of $1,086,173.56.

15  Dr. White has paid $68,826.44 in principal and $64,383.33 in interest to UniBank on the loan.

16      107.    On October 13, 2022, UniBank closed a CCU-related SBA 7(a) loan for Mr. Bryant

17  for the purchase of one CCU.  The total purchase price was $1,650,000.  The total loan amount

18  was $1,155,000.

19      108.    All loan documents were signed by Mr. Bryant.

20      109.    Mr. Bryant opened a UniBank account and funded it with approximately $613,000

21  to cover down payment on the CCU, loan fees, and several months' payments towards the loan

22  after closing.

23      110.    On October 18, 2022, Mr. Bryant authorized UniBank to wire $495,000 from his

24  account to CETA for the down payment on the CCU.  UniBank provided the wire authorization to

25  Mr. Bryant electronically over the internet via DocuSign.

26      111.    As of May 31, 2023, Mr. Bryant's loan with Unibank has a balance of

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 15

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

approximately $1,085,836.50.  Mr. Bryant has paid $69,163.50 in principal and $63,976.99 in interest to UniBank on the loan.

112.    On December 6, 2022, UniBank closed a CCU-related SBA 7(a) loan for Dr. Lee for the purchase of two CCUs.  The total purchase price was $3,300,000.  The total loan amount was $2,310,000.

113.    All loan documents were signed by Dr. Lee.

114.    Dr. Lee opened a UniBank account and funded it with $1,242,000 to cover down payment on the CCU, loan fees, and several months' payments towards the loan after closing.

115.    On December 7, 2022, Dr. Lee authorized UniBank to wire $990,000 from his account to CETA for the down payment on the CCUs.  UniBank provided the wire authorization to Dr. Lee electronically over the internet via DocuSign.

116.    As of May 31, 2023, Dr. Lee's loan with Unibank has a balance of $2,232,713.44. Dr. Lee has paid $77,286.56 in principal and $76,557.62 in interest to UniBank on the loan.

117.    On December 8, 2022, UniBank closed a CCU-related SBA 7(a) loan for Dr. Chu for the purchase of one CCU.  The total purchase price was $1,650,000.  The total loan amount was $1,155,000.

118.    All loan documents were signed by Dr. Chu.

119.    Dr. Chu opened a UniBank account and funded it with $621,000 to cover down payment on the CCU, loan fees, and several months' payments towards the loan after closing.

120.    On or about December 9, 2022, Dr. Chu authorized UniBank to wire $495,000 from his account to CETA for the down payment on the CCU.  UniBank provided the wire authorization to Dr. Chu electronically over the internet via DocuSign.

121.    As of May 31, 2023, Dr. Chu's loan with Unibank has a balance of approximately $1,109,968.04.  Dr. Chu has paid approximately $45,031.96 in principal and $50,731.43 in interest to UniBank on the loan.

122.    Each Plaintiff was required to have a checking account with UniBank to obtain the

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 16

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

loan.  UniBank mandated that some Plaintiffs' earnings from CETA be sent to UniBank for deposit into this account.

123.    Each Plaintiff also paid a substantial SBA loan fee to UniBank to get their loan.

124.    Each Plaintiff was also required by UniBank to purchase insurance on their CCU, pursuant to SBA guidelines, the premium for which cost approximately $16,000 to $45,000 per year.  UniBank put each investor in contact with the insurance providers.

**D.  UniBank's Role Went Beyond the Lender-Borrower Relationship**

125.    UniBank has extensive experience in processing and making SBA loans to borrowers.

126.    UniBank has an entire page on its website dedicated to SBA loans, where it notes that it is a "designated SBA PLP (Preferred Lender Program) and Express lender" and that "UniBank's experienced loan officer will assist you from start to finish by processing your loan application in a timely manner."[1]

127.    According to the SBA's 7(a) & 504 Lender Report, UniBank approved 38 loans in 2020 for over $47 million and 23 loans in 2021 for over $31 million.[2]

128.    UniBank's relationship to Plaintiffs for the SBA loans for CETA investments was different from a typical lender-borrower transaction.  UniBank took on a larger role by providing specific guidance as to the SBA loan process, as well as generating financial projections for the CCU investments.

129.    SBA loans are not like ordinary business loans.  There are stringent federal requirements related to what borrowers qualify for the loans and for what purposes loan proceeds can be used.  The SBA also mandates that specific forms must be used and that specific language must be incorporated into bank forms used with SBA loan applications.

---

[1] *See* https://www.UniBankusa.com/en-us/Loans/SBA-Loan.  (last accessed: June 27, 2023)
[2] *See* https://careports.sba.gov/views/7a504LenderReport/LenderReport. (last accessed: June 5, 2023)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

130.   Plaintiffs relied on UniBank's expertise, knowledge, and advice as to whether their CCU investments were eligible for an SBA loan.

131.   Plaintiffs relied on UniBank's expertise, knowledge, and assistance to ensure that they or their business entities were eligible for an SBA loan.

132.   UniBank instructed Plaintiffs on what business entity types should be used to be eligible for an SBA loan, and how those entities should be structured.

133.   UniBank provided business plans and pro forma financial projections for most Plaintiffs to submit with their SBA loan applications.   These pro formas were based upon calculations by UniBank staff, unsupported by any verified financial information related to the operation of any CCU.

134.   For instance, on October 14, 2021, UniBank Chief Credit Officer Sunny Kim discussed via email with Dr. Richard that he had altered projected revenues to account for changes in utilization and overhead expenses he deemed appropriate.

135.   Plaintiffs further relied on UniBank's expertise, knowledge, and assistance to ensure that all forms were properly completed as required by SBA regulations and guidelines.

136.   UniBank completed nearly all of the paperwork for Plaintiffs' SBA loans, and then provided them to Plaintiffs for their signature.

137.   In June 2021, after already making their first CCU-related loan, UniBank staff frequently communicated directly with Hill and CETA staff on topics such as securing insurance for the CCUs (as required by SBA for loans), confirming projected revenues that UniBank had prepared, confirming tax benefits associated with the CCU investments, and modifying CETA Operator's Agreements and partnership agreements to purportedly comply with SBA lending requirements.   All of these acts by UniBank, were done so that UniBank could provide Plaintiffs with SBA guaranteed loans to invest in CCUs from CETA.

138.   On June 10, 2021, UniBank SVP and Chief Credit Officer Sunny Kim emailed Hill and provided revenue projections that UniBank had created, asking Hill if they were reasonable.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

139.    On October 4, 2021, Sunny Kim emailed Hill and other CETA personnel with operator's agreements that UniBank had modified for SBA requirements, showing UniBank employees took an active hand in the offering of CCU investments.

140.    UniBank took financial information provided by Hill and created pro forma revenue projections for CCU investments, which Unibank then provided to investors and to the SBA.

141.    UniBank worked with New Orleans Equity Partners, LLC ("NOEP"), a Louisiana company that placed investments with CETA.

142.    NOEP's member-managers, Pam Abide and Sharon Foreman, met with UniBank's Wan Kim as early as March 2021.  Afterwards, UniBank and NOEP worked in tandem to supply documentation to Plaintiffs and to serve as a conduit for information from Hill and CETA to Plaintiffs, many of whom never actually met or spoke with Hill.

143.    Mr. McGarrah's first contact with Hill was in December 2019, after learning of CETA through an acquaintance who invested in other CETA projects.

144.    Hill provided Mr. McGarrah with offering documents on these other projects and directed him to NOEP, who handled the preparation of participation agreements for Mr. McGarrah to invest.

145.    Later, in July 2021, Mr. McGarrah first heard about the CCUs and contacted Pam Abide at NOEP to get more information.

146.    NOEP told Mr. McGarrah that UniBank was providing the SBA loans for CCUs and had approval from CETA and the SBA to provide more.  Mr. McGarrah was also provided with a pro forma financial projection of expected returns from a CCU investment.

147.    The fact that UniBank was providing multiple SBA loans for the projects legitimized the CCU investment for Mr. McGarrah.

148.    When Mr. McGarrah asked NOEP who he should talk to about investing in a CCU, instead of directing him to Hill or anyone at CETA, they directed him to Wan Kim at UniBank.

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 19

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

149.     Wan Kim represented to Mr. McGarrah that CETA was a "mom and pop operation that was poised to explode."

150.     As part of the process, UniBank put together Mr. McGarrah's business plan for submission to the SBA, including a pro forma that was substantially the same as the one NOEP had provided, but had alterations done by UniBank.

151.     Many Plaintiffs' communications related to CCU investments were first with UniBank, not CETA.  After this, it was UniBank that connected them with NOEP and/or Hill to complete the SBA loan process.

152.     Mr. Bryant first contacted UniBank about securing an SBA loan for his CCU purchase on January 5, 2022.  Mr. Bryant never had any contact with Hill or CETA until July 29, 2022, more than seven months later, when Wan Kim introduced him by email to execute agreements.  Mr. Bryant never spoke with anyone at CETA.

153.     In June 2022, Dr. White was first told about the potential to invest in the CCU project, directly, through an SBA loan with Unibank.  Dr. White communicated with Wan Kim at UniBank first, not CETA.  Dr. White was introduced to Hill via email on August 30, 2022, just one month before his loan closed, but received no reply.  Dr. White never had verbal or written communication with Hill or anyone at CETA at any time.

154.     Further, in August 2022 before closing his CCU loan with UniBank, Dr. White asked about financial projections.  Dr. White was provided with a pro forma from Wan Kim, not Hill or anyone at CETA, and instructed to sign it as part of his closing documents.

155.     Communications with UniBank employees reflect that, as early as July 2021, UniBank CEO Peter Park was fully aware that UniBank was providing SBA loans for investments in CETA's CCU projects.

**E.  UniBank Ignores Signs of Fraud and Continues Making Loans**

156.     Throughout the time period during which UniBank was issuing loans for the purchase of CCUs, UniBank employees were concerned about CETA and Hill's refusal to supply

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 20

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

audited or reviewed financial information and verification of claimed business relationships.

157.    In July 2021, after not receiving responses from Hill about CCU performance, UniBank halted the process of approving the next CCU loans.

158.    In August 2021, Hill resumed contact with UniBank.  Hill and Unibank staff worked together to structure the CCU loan terms so that they would appear to comply with SBA requirements.

159.    Still, Hill did not provide any audited or reviewed financials, bank statements, tax returns, or contracts with Exxon.

160.    Further, UniBank was aware that Hill's claimed patents and trademarks for CETA*Solve* and the CCUs did not exist.  The publication of such claims in offering documents, which UniBank possessed, is a violation of federal and state securities laws.

161.    Without any other factors, the high returns promised by CETA for the CCU investments, over 40% annually, should have been a glaring red flag for UniBank that CETA was a fraud.  These returns, combined with CETA's refusal to provide proper financials, refusal to provide tax returns, refusal to provide contracts, and Hill's confirmed lies about patents and trademarks, establish that UniBank knew or should have known that CETA was a fraud.

162.    Still, UniBank continued to issue loans to Plaintiffs and collect substantial fees and interest.  Moreover, because these were SBA loans, UniBank knew it could seek the federal guarantee on 75% of the loan balance should Plaintiffs default.

163.    Since news of the SEC action broke on May 8, UniBank has offered virtually no assistance to Plaintiffs other than offering to stretch the term of the note and perhaps lower the interest rate.  Of course, to do this, they demand a full release of liability.  No Plaintiff has signed any release of liability.

164.    UniBank's plan appears to be the same as it was in making the loans – generate revenue on the loan, use the federal guarantee to cover UniBank's risk, and, if the bubble bursts, leave Plaintiffs holding the bag.

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 21

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

**CAUSES OF ACTION**

**COUNT I – FRAUD AGAINST UNIBANK**

165.    Plaintiffs restate, reallege, and incorporate by reference all of the foregoing paragraphs of this complaint, as if fully restated herein.

166.    13 CFR § 120.10 defines an "Eligible Passive Company" ("EPC") as "a small entity or trust which does not engage in regular and continuous business activity, which leases real or personal property to an Operating Company for use in the Operating Company's business, and which complies with the conditions set forth in § 120.111."

167.    13 CFR § 120.10 defines an "Operating Company" ("OC") as "an eligible small business actively involved in conducting business operations now or about to be located on real property owned by an Eligible Passive Company, or using or about to use in its business operations personal property owned by an Eligible Passive Company."

168.    13 CFR § 120.100 provides that "[t]o be eligible for an SBA business loan, a small business applicant must: (a) Be an operating business (except for loans to Eligible Passive Companies)."

169.    13 CFR § 120.110 further provides that "[t]he following types of businesses are ineligible [for SBA business loans]: … (c) Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111)."

170.    13 CFR § 120.111 provides that "[a]n Eligible Passive Company must use loan proceeds only to acquire or lease, and/or improve or renovate, real or personal property (including eligible refinancing), that it leases to one or more Operating Companies for conducting the Operating Company's business."

171.    13 CFR § 120.111(a) details conditions of eligibility for EPCs, including "(5) The Operating Company must be a guarantor or co-borrower with the Eligible Passive Company" and "(6) Each holder of an ownership interest constituting at least 20 percent of either the Eligible

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 22

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

Passive Company or the Operating Company must guarantee the loan."

172.    13 CFR § 120.151 provides that the aggregate guarantee amount for total loans to single borrowers cannot exceed $3,750,000.  The provision specifically notes that "[t]he amount of any loan received by an Eligible Passive Company applies to the loan limit of both the Eligible Passive Company and the Operating Company."

173.    The SBA issues Standard Operating Procedures ("SOPs") to inform SBA lenders regulations governing SBA loans.  SOP 50 10 6 is the version of the SBA guidance on eligibility requirements for SBA loans, including 7(a) loans, applicable at the time the subject loans were made by UniBank.[3]

174.    The first requirement listed is that "[t]he Applicant must…[b]e an Operating Business (except for Eligible Passive Companies)." (SOP 50 10 6, p. 117).

175.    Later, the SOP provides that "[b]ecause the EPC rule is an exception, the EPC and the OC must comply with all of the conditions in 13 CFR § 120.111 and each condition is interpreted strictly." (SOP 50 10 6, p. 133).

176.    Further, the SOP provides that "[t]he OC(s) must be a guarantor or a co-Borrower on the loan," and that "[t]he OC(s) must be a co-Borrower if it receives any proceeds or if proceeds will be used to purchase any assets for the OC(s) use." (SOP 50 10 6, p. 136).

177.    Finally, the SOP provides that "[t]he EPC and each OC must submit Financial Statements. The OC's statements are subject to tax verification." (SOP 50 10 6, p. 137).

178.    UniBank staff signed an SBA Authorization form for each Plaintiff's loan application.  Plaintiffs were not required to, nor did they, sign the SBA Authorization form.

179.    The SBA Authorization form states that the lender must verify financial information of the OC, including that "[p]rior to any disbursement of Loan proceeds . . . Lender *must* submit IRS Form 4506-T to the Internal Revenue Service to obtain federal income tax

---

[3] SBA SOP 50 10 6 is available for download at https://www.sba.gov/document/sop-50-10-lender-development-company-loan-programs. (last accessed: June 5, 2023)

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 23

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

information on Borrower, or the Operating Company if the Borrower is an EPC, for the last 3 years (unless Borrower or Operating Company is a start-up business)." (emphasis added).  The lender must then "compare the tax data received from the IRS with the financial data or tax returns submitted with the Loan application, and relied upon in approving the Loan."

180.     The business models, lease agreements, and information on each Plaintiff's application, plus the information UniBank received directly from Hill and CETA, unequivocally showed that Plaintiffs would not "actively use or occupy the assets acquired . . . with the loan proceeds," as required by 13 CFR § 120.110.

181.     None of the loan documentation listed any Plaintiff as an EPC, for any SBA loan that UniBank provided to Plaintiffs.

182.     Each Plaintiff's loan documents included a Form 1919.  UniBank completed each of these Forms 1919 and submitted to Plaintiffs only for their electronic signature.

183.     SBA Form 1919 is the Borrower Information Form for 7(a) loans.  The first box on the form includes check boxes to indicate whether the "Applicant Business" is an OC or EPC. Below that box is another box to state the name of the "Operating Business" related to the loan.

184.     Neither the OC or EPC box is checked for the "Applicant Business," nor is CETA listed as the "Operating Business" on any of Plaintiffs' Forms 1919.

185.     There is no documentation in any Plaintiff's loan paperwork reflecting that UniBank submitted IRS Form 4506-T to the IRS, nor that any "financial data or tax returns" of CETA were submitted with Plaintiffs' loan applications.

186.     UniBank, through its employees, intentionally completed each Plaintiff's Form 1919 incorrectly in order to mislead Plaintiffs into thinking they qualified for the loan, which they did not, and to misstate facts to the SBA and ensure that the loans were approved when, in fact, they never should have been approved per SBA rules and guidance.

187.     UniBank, through its extensive experience as an SBA Preferred Lender, was aware of SBA lending eligibility requirements, including requirements related to EPC applicants for SBA

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 24

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

7(a) loans.

188.    UniBank, with extensive experience as an SBA Preferred Lender, was aware of how to complete SBA loan forms, including that UniBank was required to:

        a.   Identify Plaintiffs as an EPC;

        b.   Identify CETA as the OC;

        c.   Include CETA as a guarantor or co-borrower; and

        d.   collect financial documents of CETA, subject to tax verification.

189.    UniBank, through its employees, knew when it made the SBA loans that Plaintiffs were not actively involved in conducting business operations related to $CO_2$ capture and utilization.

190.    UniBank, through its employees, knew when it made the SBA loans that Plaintiffs would not actively use the CCU units that were to be purchased with the proceeds of the SBA 7(a) loans.

191.    UniBank, through its employees, knew when it made the SBA loans that CETA was the OC for Plaintiffs' SBA 7(a) loan applications, as that term is defined by SBA regulations and SOPs.

192.    Because CETA refused to provide UniBank with financial documents that were required by SBA rules and guidance, UniBank knew it could not process Plaintiffs' SBA 7(a) loan applications if it identified Plaintiffs as EPCs.

193.    UniBank wanted to make the SBA loans to Plaintiffs, even though CETA refused to provide the documentation that UniBank was required to submit to SBA if CETA was a co-Borrower on the loans.

194.    Additionally, if UniBank had identified CETA as the OC for the loans, the aggregate SBA guaranteed amount for CETA-related loans would have totaled approximately $13,623,750 – nearly $10 million over the $3,750,000 limit provided by 13 CFR § 120.151.

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 25

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

195.   UniBank, through its employees, intentionally falsified Plaintiffs' loan applications by failing to identify Plaintiffs' as EPCs.

196.   Had UniBank accurately completed the SBA Forms for Plaintiffs' loan applications, none of Plaintiffs would have qualified for or received their SBA loan.

197.   Because UniBank's employees fraudulent conduct was performed during the course and scope of their employment and with the knowledge of senior management, UniBank is liable for their acts under the doctrines of respondeat superior and agency.

198.   Plaintiffs relied upon UniBank's expertise, knowledge, and assistance to ensure that their CCU investments were eligible for an SBA loan, as well as to ensure that all forms were properly completed as required by SBA regulations and guidelines.

199.   Because of UniBank's fraud, Plaintiffs were harmed financially because they have had to pay loan fees, insurance premiums, and interest and principal towards a CCU that, if it even exists, does not function and, therefore, has no value beyond scrap value.

200.   Plaintiffs continue to be harmed because loan payments continue to be due to UniBank.

## COUNT II – NEGLIGENCE AGAINST UNIBANK

201.   Plaintiffs restate, reallege, and incorporate by reference all of the foregoing paragraphs of this complaint, as if fully restated herein.

202.   UniBank provided loans to Plaintiffs to fund their investments into CETA for the purchase of CCUs.

203.   The loans UniBank provided were SBA 7(a) loans, which had stringent and specific requirements, mandated by regulations and guidance from the SBA, about which UniBank had special knowledge, but about which Plaintiffs did not.

204.   No Plaintiff had remotely the same level of knowledge regarding SBA 7(a) loan requirements, and some had no knowledge of such requirements at all.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

205.    UniBank, through its employees, applied its special knowledge and provided advice to Plaintiffs regarding Plaintiffs' corporate structure and business plans, CETA's Operator's Agreements, and Plaintiffs' loan documentation, to ensure it would be accepted by the SBA. UniBank further completed and submitted loan paperwork to SBA, such that it would be accepted by the SBA.

206.    Plaintiffs lacked the knowledge to qualify for and receive an SBA 7(a) loan without the advice, guidance and expertise of UniBank.

207.    Because of this disparity in knowledge and skill, and because UniBank provided advice and guidance related to SBA 7(a) loan qualification requirements on which Plaintiffs relied to qualify for these government loans, UniBank was in a quasi-fiduciary position of trust, which created a duty of care that UniBank owed to Plaintiffs.

208.    UniBank breached this trust and its duty of care to Plaintiffs by ignoring obvious signs of fraud and making SBA loans to Plaintiffs for the CCU investments.

209.    UniBank breached this trust by failing to tell Plaintiffs about the signs of fraud that it saw in CETA before completing their loans.

210.    UniBank breached this trust by failing to tell Plaintiffs that their proposed investment in the CCUs would not qualify for an SBA 7(a) loan because Plaintiffs did not have ongoing businesses operations.

211.    Because UniBank's employees' negligent conduct was performed during the course and scope of their employment, UniBank is liable for actions under the doctrines of respondeat superior and agency.

212.    Moreover, UniBank is liable because standard lending practices for banks include director/governor or lending committee approval of lending policies, and potentially of each loan of the size provided to Plaintiffs, meaning UniBank directly participated in the negligent acts.

213.    Because of these breaches, Plaintiffs were harmed financially because they have had to pay loan fees, insurance premiums, and interest and principal towards a CCU that, if it even

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

1    exists, does not function and, therefore, has no value beyond scrap value.

2        214.    Plaintiffs continue to be harmed because loan payments continue to be due to

3    UniBank.

4              **COUNT III – VIOLATION OF THE SECURITIES ACT**

5              **OF WASHINGTON (RCW § 21.20.430)**

6              **AGAINST UNIBANK AND U & I FINANCIAL CORP.**

7        215.    Plaintiffs restate and reallege all of the foregoing paragraphs of this complaint and

8    incorporate by reference as if fully restated herein.

9        216.    RCW § 21.20.005(17(a) defines an investment contract as a security.

10       217.    The *Howey* test for defining an investment contract includes: (1) an investment of

11   money, (2) in a common enterprise, (3) with the expectation of profit, or (4) to be derived from

12   the efforts of others.  *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298, 66 S. Ct. 1100, 1102, 90

13   L. Ed. 1244 (1946).

14       218.    Each Plaintiff's investment in CETA for the purchase of CCUs meets all the

15   standards of the *Howey* test, therefore each investment transaction with CETA is a security.

16       219.    But for UniBank providing the SBA loans to Plaintiffs, they would not have entered

17   into these transactions.

18       220.    UniBank employees provided material misrepresentations related to the CCU

19   investments to Plaintiffs in connection with the sale of the securities, some of which were

20   forwarded from CETA and some of which UniBank employees created, including, but not limited

21   to, pro forma financials for the CCU projects.

22       221.    In communications with Plaintiffs related to the sale of the CCU investments,

23   UniBank employees omitted material information related to the securities, including, but not

24   limited to, the fact that CETA refused to provide key financial information and contracts, the fact

25   that CETA had no patents or trademarks on the CCUs or CETA*Solve*, the fact that Plaintiffs should

26   not have been qualified for an SBA 7(a) loan, and the fact that UniBank employees suspected

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 28

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

**BEASLEY ALLEN LAW FIRM**
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

fraud.

222.    UniBank's employees had a duty to confirm the veracity of representations related to the securities before providing it to Plaintiffs, particularly when UniBank created the information.

223.    UniBank employees made these material misrepresentations and omissions for the purpose of deriving corporate profit at Plaintiffs' expense.

224.    UniBank's provision of the SBA loans to Plaintiffs, which went beyond that of a lender and was more equivalent to the activities of a promoter, was a substantial contributive factor in the sale of securities to Plaintiffs.

225.    Because UniBank's conduct was a substantial contributive factor in the sale of the CCU investments to Plaintiffs, they have secondary liability as a seller pursuant to Washington law.

226.    UniBank's management was aware of the misrepresentations and omissions made to Plaintiffs, and actively participated in facilitating the issuance of SBA loans to Plaintiffs.

227.    Because UniBank's employees made these material misrepresentations and omissions to investors in the scope of their employment and with the acquiescence of management, and because UniBank derived profit from the transactions, UniBank is liable under the doctrine of respondeat superior.

228.    UniBank directly controls its employees who provided material misrepresentations and omissions to Plaintiffs.

229.    Because U&I is the sole owner of UniBank, reports all financial information of UniBank as its own, and controls UniBank and all of its employees through common officers and directors, U&I directly controls UniBank.  Thus, U&I either directly or indirectly controls the employees who provided material misrepresentations and omissions to Plaintiffs.

230.    Because of the misrepresentations and omissions made to Plaintiffs in connection with the sale of these securities, as detailed throughout this complaint, Plaintiffs were harmed

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 29

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

financially because they have had to pay loan fees, interest, and principal towards a CCU that, if it even exists, does not function and, therefore, has no value beyond scrap value.

231.     Plaintiffs continue to be harmed because loan payments continue to be due to UniBank.

## COUNT IV - VIOLATION OF THE SECURITIES ACT
## OF WASHINGTON (RCW § 21.20.430)
## AGAINST THE GOVERNOR DEFENDANTS

232.     Plaintiffs restate and reallege all of the foregoing paragraphs of this complaint and incorporate by reference as if fully restated herein.

233.     RCW § 23.95.105 provides that the "Governor" of a corporation includes directors of a business corporation, and "[a]ny other person under whose authority the powers of an entity are exercised and under whose direction the activities and affairs of the entity are managed pursuant to the organic law and organic rules of the entity."

234.     The Governor Defendants, by virtue of their authority over UniBank and U&I, exercise direct control over UniBank, U&I, and all the employees thereof.

235.     RCW § 21.20.430(3) provides that every person (including officers and directors) who controls a seller of securities who violates RCW § 21.20.430(1) or (2) is liable jointly and severally and to the same extent as the seller.

236.     Because UniBank and U&I are liable for securities fraud, the Governor Defendants are jointly and severally liable for the harm caused to Plaintiffs.

237.     Because of UniBank's misrepresentations and omissions in connection with the sale of these securities, Plaintiffs were harmed financially because they have had to pay loan fees, interest, and principal towards a CCU that, if it even exists, does not function and, therefore, has no value beyond scrap value.

238.     Plaintiffs continue to be harmed because loan payments continue to be due to UniBank.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

1

2

3

### COUNT V - VIOLATION OF THE CONSUMER PROTECTION ACT

### OF WASHINGTON (RCW § 19.86.020)

### AGAINST THE UNIBANK

4       239.    Plaintiffs restate, reallege, and incorporate by reference all of the foregoing

5   paragraphs of this complaint, as if fully restated herein.

6       240.    RCW § 19.86.010 defines the term "person" to include "natural persons,

7   corporations, trusts, unincorporated associations and partnerships."

8       241.    The provision of loans, banking, and financial services is commerce directly or

9   indirectly affecting the people of the state of Washington.

10      242.    UniBank's provision of SBA loans to each Plaintiff, with knowledge that each

11  Plaintiff did not qualify for the loans, was a deceptive act.

12      243.    UniBank's provision of SBA loans to all Plaintiffs, with knowledge that no

13  Plaintiffs qualified for the loans, was a deceptive practice.

14      244.    UniBank's conduct consisted of multiple acts targeted at multiple consumers, as a

15  part of a pattern in the course of UniBank's business.

16      245.    Because UniBank provides millions of dollars in loans to the public every year,

17  there is a real and substantial potential UniBank has and/or will engage in further such conduct,

18  causing harm to the public at large.

19      246.    UniBank's deceptive acts and practices in the conduct of commerce harmed

20  Plaintiffs financially because they have had to pay loan fees, insurance premiums, and interest and

21  principal towards a CCU that, if it even exists, does not function and, therefore, has no value

22  beyond scrap value.

23      247.    Plaintiffs continue to be harmed because loan payments continue to be due to

24  UniBank.

25

26

1

2

## COUNT VI – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT OF 1970 (18 U.S.C. § 1961, et seq.) AGAINST UNIBANK AND U & I FINANCIAL CORP

3

4      248.    Plaintiffs restate, reallege, and incorporate by reference all of the foregoing

5   paragraphs of this complaint, as if fully restated herein.

6      249.    Plaintiffs plead this count in the alternative, should the Court determine that the

7   conduct of Defendants is not deemed actionable as securities fraud.

8      250.    UniBank and U&I are persons, as that term is defined in 18 U.S.C. § 1961(3).

9      251.    As noted in the preceding paragraphs, UniBank and U&I employees and agents,

10  including their CEO, formed an association-in-fact with Hill and employees of CETA and NOEP

11  for the purpose of providing SBA loans to borrowers to invest in CCUs with CETA.

12      252.    The coordinated efforts of UniBank and U&I employees and agents with Hill and

13  CETA employees continued for nearly two years.

14      253.    18 U.S.C. § 1961(4) defines an enterprise to include "any union or group of

15  individuals associated in fact although not a legal entity."

16      254.    Due to this association-in-fact, UniBank and U&I employees and agents noted in

17  this complaint, together with Hill and employees of CETA and NOEP, operated as an enterprise.

18      255.    UniBank employees were aware that Plaintiffs could not qualify for an SBA loan

19  without CETA also being a co-guarantor or co-borrower on the loan, due to Plaintiffs' status as

20  passive, non-operating businesses.

21      256.    UniBank employees deceived Plaintiffs into obtaining these SBA loans by means

22  of false or fraudulent pretenses.

23      257.    18 U.S.C. § 1961(1) defines "racketeering activity" to include "any act which is

24  indictable under … title 18, United States Code … section 1343 (relating to wire fraud)."

25      258.    Each time UniBank employees transmitted loan documents to Plaintiffs for

26  electronic signature, they did so with knowledge that Plaintiffs did not qualify for an SBA loan.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

259.    Each time UniBank employees accepted electronically transmitted wire transfer requests from Plaintiffs, they did so with knowledge that Plaintiffs did not qualify for an SBA loan.

260.    Each time UniBank employees executed the wire transfers to CETA for purchase of the CCUs, they did so with knowledge that Plaintiffs did not qualify for an SBA loan.

261.    Each time UniBank employees transmitted loan documentation to the SBA for approval of Plaintiffs' loans, they did so with knowledge that Plaintiffs did not qualify for an SBA loan.

262.    UniBank employees transmitted the writings and signals detailed throughout this complaint in interstate commerce for the purpose of obtaining money from Plaintiffs under false pretenses.

263.    Pursuant to 18 U.S.C. § 1961(5), a "pattern of racketeering activity" requires at least two acts of racketeering activity within 10 years.

264.    Considering the number of Plaintiffs involved, Defendants executed dozens of such wire communications, all within 10 years of each other.

265.    The members of the enterprise, as employees and agents of UniBank and U&I acting within the scope of their employment, are associated with UniBank and U&I.

266.    UniBank and U&I benefited from the enterprise's pattern of racketeering activity, by obtaining fees and interest payments from Plaintiffs.

267.    UniBank and U&I conducted or participated, directly or indirectly, in the pattern of racketeering activity described herein and conducted by the association-in-fact described herein.

268.    Because UniBank and U&I benefited from the enterprise's violation, and because UniBank and U&I employees and agents were engaged in the violations within the scope of their employment, UniBank and U&I are liable under the doctrines of respondeat superior and/or agency.

269.    Because of UniBank and U&I's activity described herein, Plaintiffs were harmed financially because they have had to pay loan fees, insurance premiums, and interest and principal

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343

towards a CCU that, if it even exists, does not function and, therefore, has no value beyond scrap value.

270. Plaintiffs continue to be harmed because loan payments continue to be due to UniBank.

**PRAYER FOR RELIEF**

Plaintiffs demand judgement against Defendants for the following relief:

a. An injunction entered by the Court to defer further SBA loan payments from Plaintiffs pending the outcome of this litigation;

b. An award of compensatory, consequential, and incidental damages in an amount to be determined by a jury at trial;

c. An award of treble damages, as authorized by 18 U.S.C. § 1964(c).

d. An award of $25,000 in punitive damages, as authorized by RCW § 19.86.090, for each Plaintiff;

e. Interest;

f. Reasonable attorney fees and costs of this action; and

g. Such other relief as this Court may deem just, equitable or proper.

**RESPECTFULLY** submitted this 29th day of June, 2023.

KELLER ROHRBACK L.L.P.

By: *s/ Lynn L. Sarko*
By: *s/ Chris N. Ryder*
Lynn L. Sarko, WSBA #16569
Chris N. Ryder, WSBA #58732
1201 Third Ave., Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
lsarko@kellerrohrback.com
cryder@kellerrohrback.com

1

2          BEASLEY, ALLEN, CROW, METHVIN,
           PORTIS & MILES, P.C.

3          By: *s/ James Eubank* *
           By: *s/ Wilson Daniel "Dee" Miles, III* *
4          By: *s/ Paul Evans* *
               James B. Eubank
5              Wilson Daniel "Dee" Miles, III
               Paul W. Evans
6              218 Commerce Street
               Montgomery, AL  36104
7              Telephone (334) 269-2343
               James.Eubank@BeasleyAllen.com
8              Dee.Miles@BeasleyAllen.com
               Paul.Evans@BeasleyAllen.com
9

10         *Attorneys for Plaintiffs*

11         * *Applications for admission pro hac vice
12           forthcoming*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-971) – 35

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

BEASLEY ALLEN LAW FIRM
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343