THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRODIE L. BOWMAN, *et al.*, | CASE NO. C23-0971-JCC |
| Plaintiffs, | ORDER |
| v. | |
| UNIBANK, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 25) and Plaintiffs' motion for a preliminary injunction (Dkt. No. 3). Having thoroughly considered the parties' briefing and the relevant record, and finding oral argument unnecessary, the Court GRANTS in part and DENIES in part Defendants' motion (Dkt. No. 25) and DENIES Plaintiffs' motion (Dkt. No. 3) for the reasons explained herein.

I.   **BACKGROUND**[1]

This case arises out of twelve loans Plaintiffs obtained between March 2021 and

---

[1] The facts described below are, as appropriate on a motion to dismiss, provided by the complaint and taken as true. In addition, the Court takes judicial notice of facts established from certain Securities and Exchange Commission filings and Small Business Administration ("SBA") documents, (*see* Dkt. Nos. 26-1, 26-2), along with those provided by the SBA website (*available at* https://www.sba.gov/funding-programs/loans/7a-loans). *See* Fed. R. Evid. 201.

1    December 2022. Defendant Unibank[2] issued the loans pursuant to the U.S. Small Business
2    Administration's ("SBA") 7(a) Loan Guarantee Program.[3] Plaintiffs invested the proceeds in
3    Clean Energy Technology Association, Inc. ("CETA"). Since then, the U.S. Securities and
4    Exchange Commission ("SEC") filed suit against CETA and others for operating an alleged
5    Ponzi scheme. (Dkt. No. 1 at 2.) CETA promoted itself as inventing and owning patented
6    technology to build carbon capture and utilization units ("CCUs"), which could be installed on
7    oil and natural gas wells and pipelines to pull carbon dioxide from the gas. (*Id.*) Ultimately,
8    CETA registered no patents for the CCUs. (*Id.* at 8.)

9          In 2019, CETA's president and chairman, Roy Hill ("Hill"), began offering investors the
10   opportunity to purchase CCUs. (*Id.*) Once purchased, the investors would lease them back to
11   CETA who, in turn, would lease the CCUs to an oil and gas producer. (*Id.*) Having previously
12   used UniBank for other investments, Plaintiffs Dr. Ryan Richard ("Richard") and Kevin
13   Douglas ("K Douglas") contacted UniBank to obtain an SBA loan for their investment into
14   CCUs. (*Id.* at 9.) Thus, in 2020, UniBank's SBA loan production manager travelled to Texas to
15   meet with Hill and CETA. (*Id.* at 9–10.) They discussed potential investments and finances by
16   UniBank, and Hill provided UniBank with some of CETA's financial and contractual
17   documents. (*Id.*) Although UniBank did not obtain all the requested documents, in the Spring of
18   2021, it began financing CCU investments using SBA 7(a) loans. (*Id.* at 9–10.)[4] UniBank staff
19   frequently communicated with Hill and CETA staff on topics including securing insurance for
20   the CCUs (as required by SBA), confirming projected revenues, confirming tax benefits

---

[2] UniBank is a state-chartered commercial bank headquartered in Lynnwood, Washington. UniBank is a wholly owned subsidiary of Defendant U&I Financial Corporation ("U&I").

[3] Under this program, the SBA provides various kinds of small business loans. At issue in this case are SBA-guaranteed loans. The SBA's maximum guaranty for loans between $150,000 and $5 million is 75%, leaving lenders exposed for at least 25%. 15 U.S.C. § 636(a)(2); 13 CFR § 120.210.

[4] Specifically, UniBank obtained unaudited financial information. (*Id.*) It sought, but did not obtain, audited company financials, bank statements, tax returns, or contracts that CETA falsely claimed to have with Exxon. (*Id.*)

associated with CCU investments, and modifying CETA's Operator's Agreements and partnership agreements to purportedly comply with SBA lending requirements. (*Id.* at 18.) UniBank worked with New Orleans Equity Partners, LLC ("NOEP"), a Louisiana company that placed investments with CETA. (*Id.* at 19.)

Between March 2021 and December 2022, UniBank issued SBA 7(a) loans to the nineteen named plaintiffs, each ranging between $1,155,000 and $3,150,000 per loan, for a total of $18,165,000. (*Id.* at 10–16.) Each transaction generally proceeded as follows: the plaintiff borrower would open a UniBank account; fund it with enough to cover a down payment on the CCU, loan fees, and several months' payment towards the loan after closing; and authorize UniBank to wire money from the account to CETA. (*See id.*) UniBank would then provide the wire authorization to the plaintiff borrower, to be electronically signed via DocuSign. (*Id.*) For these services, UniBank charged applicants a $2,000 packaging fee per borrower. (*Id.* at 17.) In May 2023, the SEC filed suit against CETA, Hill, and others for operating an alleged Ponzi scheme. Shortly thereafter, the SEC secured a temporary restraining order and the appointment of a receiver over CETA and its assets. *See SEC v. Hill, et al.*, 2023 WL 3260762 (W.D. Tex. 2023). That action remains pending.

Plaintiffs assert that the high returns CETA promised for the CCU investments, combined with its refusal to provide proper documentation to UniBank, along with Hill's confirmed lies about CETA's patents and trademarks, establish that UniBank knew or should have known that CETA was a fraud. (Dkt. No. 1 at 21.) For this reason, they bring the following causes of action against UniBank: (1) fraud, (2) negligence, (3) violation of the Washington Securities Act, (4) violation of Washington's Consumer Protection Act ("CPA"), and (5) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (19 U.S.C. § 1961, *et seq.*). (Dkt. No. 1 at 22 –34.)[5] They also allege (1) violations of the Washington

---

[5] Plaintiffs plead the RICO count in the alternative, should the Court determine that Defendants' conduct is not deemed actionable as securities fraud. (Dkt. No. 1 at 32.) However, since this count serves as the sole basis for the Court's federal question jurisdiction, the Court addresses it first (below) prior to the state claims.

Securities Act by U&I and its individual officers and directors (*Id.* at 28–30), as well as (2) a RICO claim against U&I (*Id.* at 32–34). Defendants collectively move to dismiss Plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 25.)

## II.   DISCUSSION

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the Court must conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). To survive a motion to dismiss, a plaintiff must merely cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). Although the Court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

Plaintiffs allege that UniBank and U&I violated RICO through their employees, who deceived Plaintiffs into obtaining SBA loans by false or fraudulent means, with knowledge that Plaintiffs did not qualify for SBA loans. (Dkt. No. 1 at 32–33.) Under section 1962(c) of RICO, "[i]t shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a claim under section 1962(c), plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's

business or property." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002); see *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc).[6]

Defendants first contend that Plaintiffs have not adequately pled an enterprise. (*See* Dkt. No. 25 at 22.) Indeed, Section 1962(c) requires plaintiffs to allege two distinct entities: a "person" and an "enterprise." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 166 (2001). An enterprise that is not a legal entity, such as a corporation, is commonly known as an "association-in-fact" enterprise. *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F. Supp.2d 933, 939 n.6 (N.D. Cal. 2012). To show an association-in-fact enterprise, plaintiffs must allege facts to establish three elements: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that provide sufficient evidence the associates function as a continuing unit. *Odom*, 486 F.3d at 553 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Defendants argue that Plaintiffs' lack of specific pleading and factual support dooms their RICO claim. (Dkt. No. 25 at 28–29.) According to Defendants, the complaint simply asserts the existence of an enterprise but fails to allege any facts about its "framework . . . for carrying out its objectives" or how the enterprise "function[s] together as a coherent unit." (*Id.* at 29) (quoting *U.S. v. Bingham*, 653 F.3d 983, 992 (9th Cir. 2011) and *Nelson v. Nelson*, 833 F.3d 965, 968 (8th Cir. 2016)).

Defendants' argument is unpersuasive. In *Odom*, the Ninth Circuit held that RICO is to be read broadly and rejected any requirement that there be an "ascertainable structure," separate or otherwise, for an associated-in-fact enterprise. 486 F.3d at 551–52. Here, Plaintiffs have sufficiently alleged a framework in which UniBank and U&I employees formed an association-

---

[6] Moreover, Rule 9(b)'s requirement that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity" applies to civil RICO fraud claims. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). Thus, to avoid dismissal for inadequacy under Rule 9(b), the complaint would need to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* at 1066.

in-fact with Hill and employees of CETA and NOEP. (*See* Dkt. No. 1 at 32.) Specifically, Plaintiffs allege that "UniBank staff, including Wan Kim and Sunny Kim, met and communicated with Hill and others from CETA, as well as Pam Abide and Sharon Foreman of NOEP, to fabricate documents and ensure the SBA loans would go through." (*Id.* at 18–19.) Plaintiffs further alleged that UniBank closed the loans and, in most cases, wired funds to CETA on Plaintiffs' behalf and received all returns in UniBank accounts. (*Id.* at 10–16.) This, combined with other allegations, are sufficient to meet the plausibility standard at the motion to dismiss stage.

Defendants next argue that Plaintiffs have not adequately alleged the "conduct" element. For purposes of RICO, the "word 'conduct' . . . requires an element of direction." *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008) (internal citation omitted). However, "RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in *directing* the enterprise's affairs is required." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis added).

"'[R]espondeat superior may be applied under RICO.'" *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002) (quoting *Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1153 (9th Cir. 1992)); *see also Quick v. Peoples Bank*, 993 F.2d 793, 797 (11th Cir. 1993). Under RICO, however, *respondeat superior* liability attaches only if an employer benefitted from its employee's RICO violation. *Brady*, 974 F.2d at 1154–55 ("We hold that an employer that is benefitted by its employee or agent's violations of section 1962(c) may be held liable under the doctrine[] of respondeat superior . . . .").

Defendants argue that Plaintiffs allege no plausible benefit to UniBank and U&I in making non-qualifying SBA 7(a) loans. (Dkt. No. 40 at 9.) The Court agrees. According to Plaintiffs, UniBank and U&I benefitted from their employees' racketeering activities by obtaining fees and interest payments from Plaintiffs. But viewing the complaint as a whole, any such benefits pale in comparison to the costs incurred by UniBank as a result of its employees'

alleged RICO violations. Indeed, as of May 31, 2023, UniBank had collectively paid Plaintiffs approximately $18,165,000 to finance their requested CCU purchases from CETA in 2021 and 2022. (*See* Dkt. No. 1. at 10–16.) Only a portion of this amount has been repaid by these borrowers. (*Id.*) Even factoring in the portion of these loans that are guaranteed by the SBA, UniBank still faces millions of dollars in repayment exposure from these loans. (*Id.*) It also remains subject to paying the SBA annual guarantee fees that it cannot charge to the borrowers. *See* 13 CFR § 120.220(f). It is difficult to imagine how UniBank benefitted from its employees' alleged RICO violations, particularly given the significant financial exposure it faces by participating in a fraudulent scheme with CETA. Plaintiffs fail to plausibly allege a benefit. Accordingly, UniBank and U&I cannot be held vicariously liable for its employees' conduct, and Plaintiffs fails to state a RICO claim.

Plaintiffs alleged that this Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 because of the RICO claim. (Dkt. No. 1 at 6.) Because this claim is inadequately pleaded, the Court lacks federal question jurisdiction. And, lacking this jurisdictional anchor, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 25) is GRANTED in part and DENIED in part. Plaintiff's RICO claim is DISMISSED with prejudice. Their state claims are DISMISSED without prejudice (as they are jurisdictionally deficient). Accordingly, Plaintiffs' motion for a preliminary injunction (Dkt. No. 3) is DENIED as moot.

DATED this 2nd day of October 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE